```
             IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND

EDWARD FRAZEE                  :
                               :
v.                             :    Civil Action WMN-02-1816
                               :
UNITED STATES OF AMERICA       :
                               :
```

**MEMORANDUM**

Before the Court is an action for re-adjustment of partnership items determined by the Internal Revenue Service (IRS) in a Notice of Final Partnership Administrative Adjustment (FPAA) dated March 14, 2002. Specifically, Plaintiff Edward Frazee, the tax matters partner of Marsh Mountain Limited Liability Company (Marsh Mountain), seeks a determination that Marsh Mountain correctly valued a 550 acre tract of land (the donated parcel) which it bequeathed to a non-profit organization known as Garrett County Maryland Community Action, Inc. in December of 1998. Plaintiff further seeks: (1) a reversal of the adjustment in the FPAA in the amount of $1,650,000 for the value of the donated parcel; (2) a determination that Marsh Mountain is not liable for an accuracy-related penalty under 26 U.S.C. § 6662; and (3) an order enforcing the tax consequences flowing therefrom. A bench trial was held on March 29th and 30th, 2004, at which expert testimony was presented in defense of the distinct

1

valuations of the donated parcel made by both Marsh Mountain and the IRS. Because the Court found credible the testimony of both experts, it determines that the value of the donated parcel at the time of its conveyance is most accurately reflected by a figure between those advocated by Plaintiff and the Government.

## I. BACKGROUND

This litigation arises out of Marsh Mountain's acquisition of a 2,383 acre tract of land (the Brenneman tract) in Garrett County Maryland in January of 1995. The Brenneman tract is located in the general vicinity of Deep Creek Lake and the WISP ski resort and golf course, the main tourist attractions in Garrett County. Marsh Mountain eventually decided to donate a 550 acre parcel of the Brenneman tract to be developed as a center for adventure sports,[1] with the expectation that this would in turn increase the value of the remainder of their land for tourism related development. To that end, in December of 1998, Marsh Mountain

---

[1] Upon inquiry by the Court, Karen Myers (a Marsh Mountain partner) described "adventure sports" as a term of art which references self-propelled recreational activities such as skiing, kayaking, or rock climbing. According to Ms. Meyers, there are plans afoot to install on the donated parcel, apart from extensive cross country skiing trails, a recirculating white water course. Such a course, as used in the recent Olympics hosted in Australia, and the Games soon to be hosted in Greece, would be the first of its kind in North America.

conveyed the 550 acre parcel to Garrett County Maryland Community Action, Inc.

On its Form 1065, United States Partnership Income Tax Return, for calendar year 1998, Marsh Mountain valued the fair market value of the donated parcel at $2,750,000 or $5,000 per acre.  Subsequently, the Commissioner of the IRS determined that the fair market value of the donated parcel was only $1,100,000 or $2,000 per acre.  Accordingly, the IRS increased the taxable income of Marsh Mountain's partners by $1,650,000 for 1998 and determined that an accuracy-related penalty for a "substantial valuation misstatement" should apply under 26 U.S.C. § 6662.[2]  This suit followed.

## II.    DISCUSSION

The evidence submitted at trial was composed largely of testimony from: (1) Karen Myers, one of the two managing partners of Marsh Mountain; (2) Michael Goodfellow, an

---

[2] The § 6662 penalty applies, <u>inter alia</u>, when the value of any property claimed on a tax return is 200 per cent or more of the amount determined to be the correct value.  Once it has been determined that a substantial valuation misstatement has occurred, the burden is on the taxpayer to prove that there was reasonable cause for the overstatement of the value of a donated property and that the taxpayer acted in good faith, in order to avoid application of the penalty.  This reasonable cause exception, found in 26 U.S.C. § 6664(c), will only render the § 6662 penalty inapplicable where the claimed value of the property was based on a "qualified appraisal" made by a "qualified appraiser," and where the taxpayer made a good faith investigation into the value of the claimed property.

appraiser hired by Marsh Mountain to value the donated parcel; and (3) David Brooks, an appraiser hired by the Government to independently evaluate the donated parcel.  The Court was favorably impressed with the testimony of each of these witnesses and found no serious problems of credibility.  This testimony was supplemented by maps and photographs of the land in question, together with the written reports of Goodfellow and Brooks, which contained descriptions of the donated parcel and the various tracts of land to which it was compared (the comparable parcels) in order to establish its correct fair market value.[3]  The record also included a report concerning the donated parcel prepared by E. Ted Golden, the now deceased appraiser on whose valuation the Marsh Mountain partners relied in preparing their 1998 tax returns.

The Court paid careful attention to the direct and cross examinations of Goodfellow and Brooks, the two witnesses offered as experts on real estate appraisal and valuation. The Court has also compared the testimony elicited concerning the donated parcel and each of the comparable parcels to the

---

[3] "Fair market value" is defined as "[t]he most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus."  Pl.'s Exh. 20 at 2; Govt.'s Exh. 7 at 2.

4

experts' own written appraisal reports.  While both experts' opinions, as expressed orally and in writing, strike the court as generally reasonable, they nonetheless arrive at vastly different conclusions concerning the fair market value of the donated parcel.  Accepting the statement repeated by Brooks throughout his testimony, that appraising land is "more an art than a science," the Court is thus compelled to apply its own artistic brush to establish a reasonable value for the land that accurately reflects all of the evidence presented in this proceeding.

   A.   Goodfellow's Appraisal Report

   Goodfellow's report, using the market data approach,[4] compared the donated parcel to eight pieces of property sold within Garrett County and in the nearby Canaan Valley area of Tucker County, West Virginia.  His comparable parcels included land to be used for development as well as land designated for conservation.  In Goodfellow's final analysis, the "highest and best use"[5] of the donated parcel would be single family

---

[4]The market data approach "is based upon the comparative analysis of similar properties that have recently sold as they relate to the appraised property.  Adjustments are applied for differences in location, time, terms or conditions of sale, and physical characteristics of the land and/or improvements." Pl.'s Exh. 20 at 8.

[5]"Highest and best use" is defined as "[t]hat reasonable and probable use that supports the highest present value as

5

residential development or conservation/recreation, and the fair market value of the donated parcel was $2,640,000 or $4,800 per acre.

    The Government criticizes Goodfellow's report based on its failure to disclose his personal interests with respect to the owners of the property being appraised, and on his choice of comparable parcels in the Canaan Valley area in West Virginia, when he could have chosen comparable parcels exclusively in the Deep Creek area in Maryland.  The Court does not assign much weight to either of these criticisms.  It finds Goodfellow to be credible, despite the underlying indicators of bias stemming from his business dealings with Marsh Mountain partners and his wife's employment at Long and Foster under the supervision of Karen Myers.  The Court also finds that Goodfellow appropriately used land in West Virginia as comparable parcels, given the similarity and relative proximity of the Canaan Valley area of Tucker County, West Virginia to the Deep Creek area of Garrett County, Maryland.

    Other lines of criticism concerning Goodfellow's report, however, do strike the Court as significant.  The Court finds

---

defined as of the effective date of the appraisal. Alternatively, that use from among reasonably probable and legal alternative uses found to be physically possible, legally permissible, financially feasible and which results in the highest land value." Govt.'s Exh. 7 at 11.

that Goodfellow had a tendency to overvalue a piece of land's proximity to skiing and golf, while undervaluing the proximity to Deep Creek lake, especially when the comparable parcels in question included rights of access to the lake by way of private boat slips.  The Court also finds that Goodfellow significantly undervalued several of the comparable parcels by failing to fully consider their importance to state conservation plans.  The Court will adjust Goodfellow's estimates accordingly.

    B.    **Brooks's Appraisal Report**

Brooks's report, which also used the market data approach, compared the donated parcel to five pieces of property sold within Garrett County.  His comparable parcels likewise included land to be used for development as well as land designated for conservation.  The major difference in Brooks's analysis was his conclusion that the development of the donated parcel would be much more costly than was indicated in Goodfellow's report.  Therefore, Brooks determined that the "highest and best use" of the donated parcel would be for conservation/open space land or for long term holding with the potential of future residential development on portions of the parcel.  In Brooks's estimation, the fair market value of the donated parcel was

$1,100,000 or $2,000 per acre.

While the Court is generally impressed with the analysis presented in Brooks's report and his testimony, it is concerned that, contrary to Goodfellow, Brooks had the tendency to undervalue a piece of land's proximity to skiing and golf; effectively concluding that lake related activities were the only serious tourist attractions in Garrett County. The Court will adjust several of his estimates accordingly. Also, the Court will completely exclude Brooks's first comparable parcel from consideration based on the testimony from Goodfellow that the sale was not based on an arm's length transaction.

### C. Value of the Donated Parcel

After taking into account the criticisms of each of the experts' findings, the Court concludes that the 550 acre donated parcel's actual value in 1998 was $1,635,425 or $2,973.50 per acre.  As the value originally claimed by Marsh Mountain for tax purposes, $2,750,000 or $5,000 per acre, is less than 200 per cent of the Court's determination of the actual value of the donated parcel, the accuracy-related penalty for a "substantial valuation misstatement" under 26

U.S.C. § 6662 will not apply.[6]

**III. CONCLUSION**

    For the foregoing reasons, Marsh Mountain and its partners should be liable for the tax consequences of their overvaluation of the donated parcel by $1,114,575 on Form 1065 for calendar year 1998.  A separate order will issue.

                                  /s/
                         William M. Nickerson
                         Senior United States District
                         Judge

Dated: April 8, 2004.

---

[6] Were the Court to analyze the parties' arguments under §§ 6662 and 6664(c), however, it would conclude that Goodfellow's report was a qualified appraisal made by a qualified appraiser, and that Karen Myers, as a de facto expert in Garrett County real estate, made a good faith investigation into the donated parcel's value.